The State of Ohio, Appellee, *v.* Rogers, a.k.a. Hudson, Appellant.

[Cite as State *v.* Rogers (1987), 32 Ohio St. 3d 70.]

(No. 84-784—Decided August 12, 1987.)

*Anthony G. Pizza,* prosecuting attorney, *James D. Bates* and *James E. Yavorcik,* for appellee.

*John J. Callahan, Ralph DeNune III* and *Douglas A. Wilkins,* for appellant.

*Randall M. Dana, David C. Stebbins* and *Randall L. Porter,* for *amicus curiae,* Ohio Public Defender Commission.

*Per Curiam.* On January 14, 1986, the United States Supreme Court decided the case of *Wainwright* v. *Greenfield* (1986), 474 U.S. ___, 88 L. Ed. 2d 623. Respondent in that case had, at the trial level, entered a plea of not guilty by reason of insanity. During the closing argument, the prosecutor argued, in pertinent part:

"[A]nd the officer reads him his *Miranda* rights. Does he say he doesn't understand them? Does he say 'what's going on?' No. He says 'I understand my rights. I do not want to speak to you. I want to speak to an attorney.' Again an occasion of a person who knows what is going on * * * and knows the consequences of his act. * * * [A]ccording to Detective Jolley, — he's down there. He says, 'have you been read your *Miranda* rights?' 'Yes, I have.' 'Do you want to talk?' 'No.' 'Do you want to talk to an attorney.' 'Yes.' And after he talked to the attorney again he will not speak. * * * So here again we must take this in consideration as to his guilt or innocence, in regards to sanity or insanity." *Id.* at 627-628.

Basing its decision upon *Doyle* v. *Ohio* (1976), 426 U.S. 610, the court stated: "In *Doyle,* we held that *Miranda* warnings contain an implied promise, rooted in the Constitution, that 'silence would carry no penalty.' 426 U.S. at 618, 49 L. Ed. 2d 91, 96 S. Ct. 2240."[1] It was the court's view that

---

[1] "Our conclusion that it was fundamentally unfair for the Ohio prosecutor to breach that promise by using the defendants' postarrest, post-*Miranda* warnings

the government may not first induce silence by implicitly assuring " ' "that his silence will not be used against him," ' " *id.* at 630, quoting *Fletcher* v. *Weir* (1982), 455 U.S. 603, 606, " 'then using his silence to impeach an explanation subsequently offered at trial.' " *Greenfield, supra,* at 630, quoting *South Dakota* v. *Neville* (1983), 459 U.S. 553, 565. The court stated further that: "What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized."[2] *Id.* at 632.

In the case before us, appellant was advised of his *Miranda* rights pursuant to arrest and interrogation. He asserted his right to remain silent and his right to speak with an attorney. Later, he asserted his innocence by reason of insanity at the time of the commission of the crime.

We have thoroughly reviewed and reanalyzed the record in the case *sub judice* in light of *Greenfield.* The prosecution's repeated use of appellant's post-*Miranda* exercise of his rights as proof of his sanity permeated the trial. Under *Doyle* as interpreted by the United States Supreme Court in *Greenfield,* we are forced to the conclusion that error occurred, and for the reasons which follow, we must now reverse appellant's conviction in accordance with the mandates of *Greenfield.*

In reviewing the trial transcript, we note that the prosecution asked Officer McClellan whether he read the *Miranda* warnings to appellant and whether appellant, in the officer's opinion, understood his rights. Appellant's counsel then sought to elicit testimony on cross-examination that appellant was "apathetic throughout the entire procedure." On cross-examination of Officer Marx, appellant's counsel inquired expressly as to appellant's reaction concerning each particular right, including his exercise of his right to an attorney and, impliedly, his right to keep silent. While it seems clear that counsel hoped to discover evidence that appellant's responses were less than intelligent or cogent, the very opposite being, in fact, demonstrated, it is nevertheless certain that appellant's counsel first broached the issue of whether appellant's conduct and exercise of his *Miranda* rights were evidence of insanity.

The prosecution immediately responded on redirect with an exhaustive inquiry into appellant's responses when informed of his *Miranda* rights, including appellant's statement that he wanted "to talk to a lawyer first." After describing appellant's actions of going over to the telephone, looking up the telephone number of an attorney, calling the number, and conversing with the attorney, the officer testified that appellant "advised me that he had contacted his attorney, Mr. Gottlieb, and that his attorney advised him not to sign any papers, not to make any statements to the police * * *." After a recross-examination by appellant's

---

silence to impeach their trial testimony requires us also to conclude that it was fundamentally unfair for the Florida prosecutor to breach the officers' promise to respondent by using his postarrest, post-*Miranda* warnings silence as evidence of his sanity." (Footnote omitted.) *Wainwright* v. *Greenfield, supra,* at 632.

[2] With this point, Justice Rehnquist and the Chief Justice have voiced disagreement in the concurring opinion. They would limit *Doyle's* impact to the exercise of the right to silence. See *Wainwright* v. *Greenfield, supra,* at 633-635 (Rehnquist, J., concurring.) Nevertheless, the majority has determined to extend *Doyle* beyond the exercise of the right to silence.

counsel wherein it was pointed out that appellant merely exercised his constitutional rights, the prosecution inquired as follows:

"Q. With regard to that line of questioning, you stated it's not wrong for a person to assert their [*sic*] Constitutional rights. Do you consider those the actions of an insane man, Detective Marx?

"A. No, I would not."

During appellant's case-in-chief, counsel presented several experts attesting to appellant's insanity. On cross-examination of Dr. Leopold, the prosecution utilized the fact that appellant responded rationally to the reading of his *Miranda* rights and acted intelligently in exercising his right to contact an attorney of his choice, to force the psychiatrist to conclude as follows:

"A. * * * And from what you described, the phone call, the lawyer, the attempt of hiding the body, he apparently knew right from wrong. Could he conform [his conduct to that standard]? I guess at the moment he could have. So it changes my opinion, yes."

The psychiatrist also agreed, in a complete change of opinion, that appellant knew the difference between right and wrong "at the time of the offense" and had the ability "to have refrained from doing the act."

On redirect of the state's rebuttal expert, Dr. Sherman, the prosecution questioned as follows:

"Q. Now, Doctor, * * * were you aware that Mr. Rogers had exercised his right to remain silent and talk with an attorney?

"A. No, I was not aware of that.

"Q. If you were aware of that fact, Doctor, that some two hours after his arrest, upon being given his rights by the detective, he had indicated that he wanted to discuss the matter with an attorney, approximately 2:00 a.m.

in the morning remembered the name, location, the phone number and had a discussion with an attorney, would that help you at all in your evaluation of Mr. Rogers?

"A. Most certainly it would.

"Q. And what assistance would that give you in your evaluation?

"A. It would assist me in at least two areas: the first regards refuting diagnosis, say, of an organic brain syndrome, like an alcohol amnestic syndrome. * * * He had the presence of mind to look up a particular attorney's name, which, incidentally, brings up the second issue, which is his ability to attend to a topic at hand. Individuals who have got organic brain syndromes have very short attention spans. * * * It also suggests to me that this individual had some knowledge that he was in some sort of trouble.

"Q. Now, Doctor, assuming those facts to be true for the purpose of this question, would those facts or factors assist you in your examination of Mr. Rogers in forming your opinion to a reasonable medical certainty as to the sanity of Mr. Rogers at the time in question?

"A. It would have corroborated my current opinions."

In closing arguments, the prosecution made repeated references to appellant's exercise of his *Miranda* rights. Mr. Yavorcik stated:

"You also heard Detective Marx testify, summarize his investigation. He also told you about Billy's efforts to obtain an attorney. Looked through a phone book at two in the morning to find his attorney, same attorney who had represented him before, 1980 case. Make the call, come back and tell Detective Marx, 'No more questions.'"

Later, he commented:

"Doctor Leopold in fact impeached the psychologist called by the defense, Christopher Layne. When confronted

with the fact that the defendant had the presence of mind to look up his attorney's name, what was his opinion? Could the Defendant conform his actions to the requirement of law? 'I guess at that time he could,' that's what Doctor Leopold said."

The state's co-counsel, Mr. Bates, also referred to appellant's exercise of his right to silence. In commenting on Dr. Leopold's testimony, he stated:

"When he's given the facts just the way that you have been given these facts — and almost all of the facts in this case are uncontroverted — he changes his opinion. 'If those are the facts, the necktie, the time, the exercising of the rights affidavit, in my opinion he was sane.' "

Later, he added:

"And what does he do when he gets to the Detective Bureau? He doesn't say I don't remember. He doesn't say anything about the offense. He says, I understand my third right. I am going to call Mr. Gottlieb who[m] he remembers from a prior case, and then tells Detective Marx I don't want to talk with him. Now, are those the actions of an insane person or are those the actions of a person who is acting responsibly, knowing what his rights are and exercising those rights?"

It is apparent that the trial court and parties for both sides perceived no error in the evidentiary use of appellant's post-*Miranda* exercise of his rights, but viewed appellant's actions as probative evidence on the issue of insanity. There was no objection by defense counsel, who, several times, entered into the exact same subject matter during questioning. The trial court did not curtail such incursions and gave no limiting instruction.

Because the error was not objected to, it generally could be considered as being waived. Accordingly, we must consider the above colloquies under the plain or harmless error analysis. *Wain-*

*wright* v. *Greenfield, supra,* at 635-636 (Rehnquist, J. concurring); see, also, State v. *Williams* (1983), 6 Ohio St. 3d 281, 6 OBR 345, 452 N.E. 2d 1323; State v. *Rahman* (1986), 23 Ohio St. 3d 146, 157, 23 OBR 315, 324, 492 N.E. 2d 401, 411 (Holmes, J., dissenting); State v. *Zuern* (1987), 32 Ohio St. 3d 56, 512 N.E. 2d 585. See, also, *Chapman* v. *United States* (C.A.5, 1976), 547 F. 2d 1240, 1248, certiorari denied (1977), 431 U.S. 908; *Martin* v. *Foltz* (C.A.6, 1985), 773 F. 2d 711, 715; *United States* v. *Disbrow* (C.A.8, 1985), 768 F. 2d 976, 980; *United States* v. *Ortiz* (C.A.9, 1985), 776 F. 2d 864, 865; *United States* v. *Remigio* (C.A.10, 1985), 767 F. 2d 730, 735; *United States* v. *Ruz-Salazar* (C.A.11, 1985), 764 F. 2d 1433, 1437. We note that federal courts, in applying the plain or harmless error analysis in cases where there had been *Doyle* violations, with near unanimity, have held such to be violative of due process and therefore prejudicial, requiring a reversal. See, *e.g., United States* v. *Elkins* (C.A.1, 1985), 774 F. 2d 530, 539; *Hawkins* v. *LeFevre* (C.A.2, 1985), 758 F. 2d 866, 877; *United States* v. *Cummiskey* (C.A.3, 1984), 728 F. 2d 200, 204, affirmed after remand (1984), 745 F. 2d 278, certiorari denied (1985), 471 U.S. 1005; *Williams* v. *Zahradnick* (C.A.4, 1980), 632 F. 2d 353, 360.

Obviously, the evidence from appellant's post-*Miranda* exercise of his rights was not used to impeach his in-court testimony, since he never took the witness stand. However, it was used to attack appellant's insanity defense throughout the trial, and thus went to the heart of appellant's defense. Also, the reliance was repeatedly and expressly upon appellant's exercise of both his right to silence as well as his right to an attorney. Not only was such exercise of rights utilized in closing argument, but

in the prosecution's case-in-chief, as well as to overturn appellant's expert witness' opinion. Beyond any serious doubt, therefore, the rule set forth in *Greenfield* was violated at crucial stages of the trial and appellant's exercise of his right to keep silent was utilized as substantive evidence against him.

While pointing out that certain portions of the testimony concerning the appellant obtaining legal counsel are certainly probative evidence of appellant's sanity when he committed the acts in question, we must nevertheless abide by the principle of law mandated upon us by the United States Supreme Court that an exercise of rights under the Constitution cannot be used as evidence against appellant where such exercise was in response to the *Miranda* rights being read to him. In the new trial, which we now must regrettably order, police may of course testify concerning their impressions of appellant's answers to their questions, his degree of comprehension and any conduct which they observed. *Wainwright* v. *Greenfield, supra,* at 628, 632, and 634, footnote (Rehnquist, J., concurring). References to appellant's right to silence, his right to an attorney, or the exercise thereof, should not be made. But, *cf., Fletcher* v. *Weir, supra.*

We, therefore, reverse the determinations of the courts below in accordance with the United States Supreme Court's opinion in *Wainwright* v. *Greenfield,* and remand for a new trial.

*Judgment reversed
and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, REILLY, WRIGHT and H. BROWN, JJ., concur.

REILLY, J., of the Tenth Appellate District, sitting for DOUGLAS, J.