The STATE of Ohio, Appellee,

v.

DAY, Appellant.

[Cite as *State v. Day* (1991), 72 Ohio App.3d 82.]

Court of Appeals of Ohio,
Ross County.

No. 1655.

Decided Jan. 8, 1991.

*Richard G. Ward,* for appellee.
*J. Jeffrey Benson,* for appellant.

GREY, Judge.

This is an appeal from a jury verdict of the Ross County Court of Common Pleas, finding Michael Day guilty of escape in violation of R.C. 2921.34(A), abduction in violation of R.C. 2905.02(A)(2), carrying a concealed weapon in violation of R.C. 2923.12(A), and having weapons while under disability in violation of R.C. 2923.13(A)(1).

The record reveals the following facts. Michael Day was an inmate at the Ross Correctional Institute ("RCI") in Chillicothe, Ohio. Day worked in the prison as shift captain's clerk. Through his job he came into contact with Corrections Officers Warnock and McCorkle. He also acquired a gun smuggled into the prison in a television set shipped to him by a female pen pal. On the evening of May 22, 1988, while in the captain's office, he handed McCorkle a note stating that he had a gun and help on the outside. McCorkle radioed officer Delaney to come to the captain's office. Delaney was ordered to remove his uniform and was handcuffed in a closet. Day changed into Delaney's uniform and wrapped the gun in a towel. The two walked out of

the building, entered a prison vehicle, and drove to the front gate. McCorkle radioed that he had an injured employee and proceeded through the gate. Warnock was on duty in a perimeter vehicle outside the gate. McCorkle and Day entered Warnock's vehicle and the three drove to the Holiday Inn in Chillicothe. Day handcuffed Warnock to the steering wheel and went with McCorkle into the Holiday Inn where they were met by Day's wife, Sylvia. Day handcuffed McCorkle to a towel rack in the bathroom.

Sylvia Day's Nissan was parked at the Holiday Inn. The two drove to McDonald's restaurant where they parked the vehicle and walked to an L & K Motel. The couple then arranged transportation to Columbus where they rented a car and drove to Mexico.

The police located the Nissan behind McDonald's. When the police processed the vehicle they found a .25 caliber automatic pistol in the pocket of the corrections officer's uniform.

Day was subsequently apprehended in Mexico and transported back to Ross County where he was charged with escape, two counts of kidnapping, abduction, aggravated robbery, carrying a concealed weapon, unauthorized use of a motor vehicle, and having a weapon under disability.

Attorney Jeffrey Benson was appointed to represent Day. Day's motion to proceed *pro se* was granted by the trial court. Attorney Benson was appointed as advisory counsel. Day subsequently asked the court to reappoint Benson as his attorney.

At trial, Day testified that Warnock and McCorkle helped in his escape and that their apparent kidnapping was part of the plan. Officer Delaney testified that while he was removing his uniform, McCorkle told Day not to take the keys because he would not be able to get out with them. Some jurors apparently believed Day, because there was a hung jury on the two counts of kidnapping, unauthorized use of a motor vehicle, and aggravated robbery. The court declared a mistrial on those counts. The jury did find Day guilty of escape, abduction of Delaney, carrying a concealed weapon, and having a weapon under a disability. Day has filed a timely notice of appeal to this court.

## FIRST ASSIGNMENT OF ERROR

"The trial court erred to the prejudice of the appellant by ruling he did not have standing to contest the search of his wife's motor vehicle."

■ Sylvia Day's Nissan was discovered approximately six hours after the Days abandoned the vehicle at McDonald's. The police found the gun in the vehicle during an inventory of its contents. Day filed a motion to suppress.

At the suppression hearing, the court found that Day did not have standing to challenge the search, and overruled the motion.

The Fourth Amendment protects individuals from unreasonable governmental intrusions into their legitimate expectations of privacy. These rights are personal rights which may not be asserted vicariously. See *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387. One who challenges a search has the burden of establishing an infringement of his personal Fourth Amendment rights. See *id.* One who does not assert a proprietary or a possessory interest in the property seized, or does not have a reasonable expectation of privacy in the area searched, lacks standing to challenge the search. See *id.*

An inquiry into a reasonable or a legitimate expectation of privacy normally includes the following two questions:

(1) whether the individual, by his conduct has exhibited an actual (subjective) expectation of privacy, that is, whether he has shown that he seeks to present something as private; and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable, that is, whether the expectation, viewed objectively, is justifiable under the circumstances. *Smith v. Maryland* (1979), 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226–227.

At the suppression hearing, Sylvia Day testified that she purchased the Nissan prior to her marriage and made all of the payments herself. She testified that her husband had never driven the vehicle. Day has not presented any Ohio law in support of his proposition that marital status *per se* provides him with the same property and possessory rights as his wife. We are not inclined to accept such a holding. Under Ohio law, by marriage, a husband does not acquire an interest in the separate personal property of his wife. See R.C. 3103.04. Therefore, Day had neither a possessory nor a proprietary interest in the vehicle.

The only question which remains is whether Day had a legitimate expectation of privacy in the Nissan. Day did not prove a subjective expectation of privacy in the Nissan. His use of the vehicle was brief, and he abandoned the vehicle and fled to Mexico in a rental vehicle. We find that Day had no reasonable expectation of privacy after he abandoned his ephemeral contact with this vehicle.

Appellant's first assignment of error is overruled.

## SECOND ASSIGNMENT OF ERROR

"The appellant was effectively denied his Sixth Amendment right to represent himself by the trial court's refusal to grant him access to a law library

and/or the trial court's refusal to allow advisory counsel to actively participate at trial."

A criminal defendant has a Sixth Amendment right to conduct his own defense with assistance at trial. See *McKaskle v. Wiggins* (1984), 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122. Furthermore, that defendant has a right to access to the courts and access to legal research material. See *Bounds v. Smith* (1977), 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72.

■ Day first argues that he was denied access to the courts because he was denied meaningful access to legal research materials. Upon his return from his escape to Mexico, he was housed at the J–1 Super Max Block at the Southern Ohio Correctional Facility. Day was permitted to leave his cell twice a week to shower. He could receive one specific volume per request from the law library via prison mail, but was not permitted direct access to the law library. He could not make telephone calls.

The court appointed attorney Benson as advisory counsel. Benson was made available to act as Day's clerk and research areas of law of concern to him. Communication between the two would be by mail. Adequate law libraries in prisons are one constitutionally acceptable method to assure meaningful access to courts, but alternative means are not necessarily foreclosed. *Bounds, supra.* Day was not denied meaningful access to legal research material. He could receive one volume per request through prison mail. He also had Benson's legal expertise in researching and interpreting the law.

■ Day next argues that he should have been permitted to participate as Benson's co-counsel throughout the trial. "Although appellant has the right either to appear *pro se* or to have counsel, he has no corresponding right to act as co-counsel on his own behalf." *State v. Thompson* (1987), 33 Ohio St.3d 1, 6–7, 514 N.E.2d 407, 414.

Appellant's second assignment of error is overruled.

## THIRD ASSIGNMENT OF ERROR

"The appellant was deprived of due process of law guaranteed by the Sixth and Fourteenth Amendments by the trial court's refusal to grant a continuance and/or a mistrial."

■ A jury trial was scheduled to begin on September 12, 1989. On September 11, 1989, the court granted Day a continuance until December 11, 1989 so that he could arrange to have his wife present at trial to testify on his behalf. On October 5, 1989, the court signed a certificate to compel Sylvia Day's attendance at trial. The certificate was sent to her state of residence in

the manner required by Ohio law. However, the certificate was never served upon her.

On the third day of trial, Sylvia was still not available and Day asked for another continuance. The court granted him a continuance to the following day. On the fourth day of trial, Day asked for a third continuance or a mistrial. The court overruled Day's motions and concluded that "there is no reasonable likelihood that a reasonable continuance would result in the attendance of this witness."

"The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger* (1981), 67 Ohio St.2d 65, 21 O.O.3d 41, 423 N.E.2d 1078. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149. We agree with the trial court. A third reasonable continuance would not have secured Sylvia Day's attendance.

It is likely that Sylvia Day would have testified that the two corrections officers aided Day in his escape. That evidence would have supported Day's theory that he did not kidnap the corrections officers. However, the jury apparently believed Day's testimony and did not return a verdict on the two counts of kidnapping, unauthorized use of a motor vehicle, or aggravated robbery. Day was not prejudiced by his wife's failure to testify on his behalf. The trial court did not err when it overruled Day's motion for a continuance or a mistrial.

Appellant's third assignment of error is overruled.

## FOURTH ASSIGNMENT OF ERROR

"The trial court erred, to the prejudice of the appellant, by not declaring a mistrial and/or ordering a new trial on the basis of prosecutorial misconduct."

Day contends that during closing argument, the prosecutor unfairly attacked him for his postarrest silence.

The prosecutor made the following statement in the closing argument:

"Does it strike you as unusual that nineteen months after the escape Michael Day finally comes forward and tells his story? Does it not strike you as a little bit unusual that if you had these matters available and this information available to you you'd run to the warden, you'd run to the associate warden, you'd tell somebody, 'Hey, I had help in this thing. I didn't do all these things.' You wait until the last witness in your trial to bring that forward? Does that make sense to you?"

The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.

In *Doyle v. Ohio* (1976), 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98, the Supreme Court held:

"[W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings: In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."

In *Fletcher v. Weir* (1982), 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490, 494, the Supreme Court distinguished *Doyle, supra,* and held:

"In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. The State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony."

In *Doyle* and *Fletcher, supra,* the Supreme Court recognized that a defendant's substantial rights are violated when a prosecutor creates an inference of guilt from a defendant's postarrest silence. *Fletcher* stands for the proposition that, rather than as was done in *Miranda* for example, the Supreme Court would leave to each state the duty to protect these rights under the procedures and rules of evidence of that state. *Fletcher* stands for deference to the state courts, under a federal system, and should not be construed as an erosion of basic rights. *Fletcher* cannot be construed to hold that a prosecutor may argue to a jury that the defendant must be guilty because he remained silent, or asked for an attorney, or demanded a search warrant, or asserted any other rights.

In the present case, Day's constitutional right to remain silent was violated when the prosecutor created an inference of guilt from his postarrest silence. The prosecutor's remarks were improper and prejudicially affected a substantial right. Appellee argues that this excessive, and unnecessary, comment by the prosecutor was appropriate. Clearly it was not, and clearly it created an issue of an infringement of constitutional rights and the real possibility of prejudicial error.

Appellant states that an objection was made to the prosecutor's inference of guilt, but from our review of the record, we do not find an objection.

"Generally, an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Lancaster* (1971), 25 Ohio St.2d 83, 54 O.O.2d 222, 267 N.E.2d 291. By failing to object, Day waived the claim of error.

This case seems to exemplify what the Supreme Court had in mind in *Fletcher, supra.* The prejudicial effect of any event occurring at trial is often difficult to determine, such as assessing the probable impact of the error on the average juror, as per *Harrington v. California* (1969), 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. Ohio's rule which requires that an objection must be made at trial, is rooted in, among other considerations, the idea that when trial counsel hears something really prejudicial, he will immediately object. Counsel's failure to object is some indication that the error may not have been as prejudicial as it appears, or even perhaps that counsel found the potentially prejudicial matter useful to his case.

In following *Fletcher* here, we find that under the rule laid down in *Doyle, supra,* the prosecutor attempted to create an impermissible inference of guilt, but that under the Ohio rules for appellate review, the failure to object means that it was not so prejudicial as to require reversal.

Appellant's fourth assignment of error is overruled.

The decision of the common pleas court is affirmed.

*Judgment affirmed.*

HARSHA and STEPHENSON, JJ., concur.

HARSHA, Judge, concurring.

I concur in the judgment overruling appellant's assignments of error and affirming the judgment of conviction and sentence entered by the court below, but write separately in that I disagree with the rationale utilized by the principal opinion in overruling appellant's fourth assignment of error.

Appellant's fourth assignment of error asserts that the trial court erred by not declaring a mistrial and/or ordering a new trial on the basis of prosecutorial misconduct. During closing argument, appellee's counsel emphasized that appellant had waited nineteen months from the time of his May 22, 1988 escape until the December 1989 jury trial to tell his story about two corrections officers assisting him during the escape. The principal opinion would hold that this was error, but that such error was waived because "from our review of the record, we do not find an objection."

However, it is apparent from reviewing the record that the following exchange occurred at page 691 of the transcript, a page explicitly designated in appellant's brief:

"MR. BENSON: For the record, I didn't interrupt Mr. Ward, but I * * * do object to his comment on Day's failure to speak further. I feel it's an unfair comment by the prosecution on Day exercising his Fifth Amendment Right not to testify or speak against himself.

"MR. WARD: I thought he took the stand and testified, Your Honor. I'm sorry.

"JUDGE: We note your objection for the record, Mr. Benson. We overrule it and we note your exceptions to our ruling."

Accordingly, the principal opinion is incorrect in stating that appellant waived his argument on appeal by failing to object below. Indeed, appellee does not assert to the contrary. Consequently, we must address the merits of appellant's contentions regarding prosecutorial misconduct.

The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885. It is improper to allude to matters which are irrelevant to the case at bar or that are not supported by admissible evidence. *Id.;* see, also, DR 7–106(C)(4).

Where a defendant maintains silence after receiving *Miranda* warnings, the holding in *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91, prohibits the prosecution from using that absence of speech for impeachment purposes in cross-examination or in closing argument. See, *e.g., State v. Sabbah* (1982), 13 Ohio App.3d 124, 13 OBR 155, 468 N.E.2d 718. The *Doyle* holding rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial. *Greer v. Miller* (1987), 483 U.S. 756, 763, 107 S.Ct. 3102, 3107, 97 L.Ed.2d 618, 628; *Wainwright v. Greenfield* (1986), 474 U.S. 284, 291, 106 S.Ct. 634, 638, 88 L.Ed.2d 623, 630. Conversely, in the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, it is not violative of constitutional due process of law to permit cross-examination as to postarrest silence when a defendant chooses to take the stand. *Fletcher v. Weir* (1982), 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490, 494; *Greer, supra,* 483 U.S. at 763, 107 S.Ct. at 3108, 97 L.Ed.2d at 629.

In the case at bar, appellee contends that *Fletcher* controls because "[t]here is no evidence in the record that this Appellant ever received his *Miranda*

warnings" and "[t]here is no evidence in the trial record that this Appellant was ever interrogated by any law enforcement officers." In *Fletcher, supra,* 455 U.S. at 605, 102 S.Ct. at 1311, 71 L.Ed.2d at 493, the United States Supreme Court emphasized that the record did not indicate that the defendant received any *Miranda* warnings during the period in which he remained silent immediately after his arrest. The record in the instant case, contrary to appellee's assertions on appeal, includes appellee's March 14, 1989 answer to appellant's demand for discovery and clearly indicates that appellant received *Miranda* warnings on both May 27, 1988 and January 19, 1989. Moreover, appellant's pretrial statements indicated that he at that time contended that correctional institution employees had been involved in his escape.

Based upon the foregoing, appellee's counsel's statements in closing argument that appellant had waited until trial to advise anybody that correctional employees had assisted him during his escape were both factually inaccurate and, since appellant was Mirandized, violative of appellant's constitutional right to due process of law under *Fletcher* and *Doyle, supra.* Normally, *Doyle* violations are considered to be prejudicial *per se* and are not subject to a harmless error analysis. *State v. Rogers* (1987), 32 Ohio St.3d 70, 73, 512 N.E.2d 581, 584. However, in this context, such an analysis is warranted.

In order to be deemed nonprejudicial, error of constitutional dimension must be harmless beyond a reasonable doubt. *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, paragraph three of the syllabus. Appellee's counsel's statements were directed to appellant's argument that he was not guilty of kidnapping the two corrections officers because they had helped plan his escape. However, appellant was not convicted of either of the kidnapping charges. Moreover, appellant's counsel during closing argument noted as follows:

"You heard the testimony of Mr. Day. Mr. Day admits to you that he was under detention. Without permission he left the grounds at R.C.I. He admits to you that he had a loaded weapon; that he was under disability. Mr. Day denies that he kidnapped either McCorkle or Warnock."

Appellant was convicted only of escape, abduction, carrying a concealed weapon, and having weapons under disability. Appellant's own testimony essentially admitted the crimes of escape, carrying a concealed weapon, and having weapons under disability. With respect to the abduction charge, RCI Officer Duane R. Delaney testified, as appellant's witness, that appellant pointed a gun at him, told him to remove his clothes, and told him after he was handcuffed not to make a sound or appellant would kill him. Appellant testified that he had a loaded gun in his hand when Officer Delaney was forced to remove his uniform and further admitted that he threatened Officer

Delaney after he was handcuffed. I am persuaded that this uncontroverted evidence of abduction, in violation of R.C. 2905.02(A)(2), and under the limited circumstances of this case, rendered the trial court error in failing to sustain appellant's objection to appellee's counsel's improper closing argument harmless beyond a reasonable doubt. Hence, I concur in the judgment of affirmance.

STEPHENSON, Judge, concurring.

I concur in the judgment of the lead opinion and that portion of the opinion which disposes of appellant's first, second, and third assignments of error. I further concur in the concurring opinion of Judge Harsha which addresses appellant's fourth assignment of error.