The STATE of Ohio, Appellee,

v.

VAN METER, Appellant.

[Cite as *State v. Van Meter* (1998), 130 Ohio App.3d 592.]

Court of Appeals of Ohio,
Third District, Henry County.

No. 7–98–02.

Decided Nov. 25, 1998.

John H. Hanna, Henry County Prosecuting Attorney, for appellee.

Hanna & Hanna and Drew Hanna; Dennis W. McNamara, for appellant.

THOMAS F. BRYANT, Judge.

This appeal is taken by defendant-appellant Russell Van Meter from a judgment of the Court of Common Pleas of Henry County finding him guilty of rape and gross sexual imposition.

On June 25, 1997, Van Meter was indicted on one count of rape, violating R.C. 2907.02, and three counts of gross sexual imposition, violating R.C. 2907.05. A jury trial was held on December 30, 1997, and a verdict of guilty was returned on all counts. On March 2, 1998, the trial court sentenced Van Meter to life in prison.

Van Meter makes the following assignments of error:

"1. The trial court erred when it permitted the prosecutor to adduce testimony and to argue to the jury that Van Meter requested counsel after being advised of his *Miranda* rights.

"2. The trial court erred when it precluded Van Meter from calling the alleged victim, Jon Pugsley, as a witness.

"3. The actions and omissions of Van Meter's trial attorney deprived Van Meter of his right to effective assistance of counsel.

"4. The trial court erred when it permitted prosecutorial misconduct in opening statement and closing argument."

The first assignment of error deals with whether a prosecutor may impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his exercise of his *Miranda* rights. This question has been addressed by the United States Supreme Court in *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. In *Doyle,* the defendants were arrested for selling marijuana. After being read the *Miranda* rights, the defendants chose to remain silent and requested attorneys. At trial, the defendants testified that the informant was attempting to sell them marijuana rather than buying it from them. The prosecutor attempted to impeach this story by questioning the defendants about their failure to tell this story to the police prior to trial. The court stated:

"Despite the importance of cross-examination, we have concluded that the *Miranda* decision compels rejection of the State's position. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights * * * require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. * * * Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. Mr. Justice White, concurring in the judgment in *United States v. Hale* [(1975), 422 U.S. 171] at 182–183, 95 S.Ct. [2133] at 2139 [45 L.Ed.2d 99 at 108], put it very well:

" '[W]hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference

might be drawn as to the truth of his trial testimony. * * * Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from *Miranda* warnings that this would not be the case.'

"We hold that the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." (Citations omitted) *Id.* at 617–619, 96 S.Ct. at 2244–2245, 49 L.Ed.2d at 97–99.

The Ohio Supreme Court has also addressed the question of whether an exercise of *Miranda* rights can be used against the defendant. *State v. Rogers* (1987), 32 Ohio St.3d 70, 512 N.E.2d 581. In *Rogers,* the defendant was claiming an insanity defense and did not take the stand. However, the state questioned the officer concerning the defendant's exercise of his *Miranda* rights to show that the defendant was not insane. The court concluded that the state may not use the exercise of a *Miranda* right against the defendant and that to do so resulted in a plain violation of due process.

■ Here, the state claims that because the defendant took the witness stand, he waived all of his rights and was open to questions about why he remained silent and why he asked for an attorney. In support of this argument, the state cites *Jenkins v. Anderson* (1980), 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86. In *Jenkins,* the defendant surrendered to the authorities two weeks after killing his victim. At trial, the defendant took the stand and claimed self-defense. The state was permitted to cross-examine the defendant about why he waited two weeks to tell his story and to impeach the defendant's credibility by suggesting that he would have spoken out immediately if the killing were truly in self-defense. However, this case is distinguishable from the case before us in a very important manner. The silence about which the state was questioning in *Jenkins* was that prior to the defendant being read his *Miranda* rights. The defendant's silence was not an exercise of his rights and, therefore, no promise was implied that the silence would not be used against the defendant.

■ In this case, the defendant was read his *Miranda* rights before questioning. Although here the defendant was not under arrest, as were the defendants in *Doyle,* the reading of the *Miranda* rights is all that is necessary to trigger the implied promise that the exercise of those rights will not be used to show guilt. Here, the state attempted to show that the defendant was guilty of the offense charged by drawing the inference of guilt from his failure to deny the charges when questioned, but instead asking for an attorney.

"Q. You were picked up on the 25th?

"A. Yes, sir.

"Q. And you immediately told Detective Alvord I didn't do any of this stuff, didn't you?

"A. I don't believe those were my words, sir.

"Q. As a matter of fact, your words were I don't want to talk to you?

"A. I don't believe those were my words sir.

"Mr. Drew Hanna: We object. The accused always has the right to remain silent, and for Mr. Hanna to argue that is in some way evidence against him is impermissible, and we move to strike, Your Honor.

"The Court: Mr. Hanna, you wish to be heard?

"Mr. John Hanna: The Court please, it is not impermissible when he takes the witness stand. His response when the police talked to him, whether he exercises his right to remain silent or whether he answers the question is a permissible question.

"Mr. Drew Hanna: It is—it is—

"Mr. John Hanna: He can answer it.

"Mr. Drew Hanna: He has an absolute right to remain silent, and no inference can remain drawn from his remaining silent.

"The Court: That is true.

"Mr. John Hanna: That is not true, Your Honor. That is true if he takes—if he does not take the witness stand, no inference can be drawn from the fact that he does not take the witness stand. Once he takes the witness stand, anything that he has said or done is fair game for questioning.

"The Court: Let's ask him exactly what he said previously.

"Mr. John Hanna: That is fine.

"The Court: I don't think there has been a precise question asked.

"Mr. John Hanna: When Detective Alvord picked you up, advised you of your Constitutional rights; did he not?

"A. No, sir.

"Q. He never advised you of your Constitutional right?

"A. No, sir.

"Q. Okay, Did he ask you any questions?

"A. Sir, what I remember is, a bunch of police in my apartment. Wouldn't that scare anybody?

"Q. When you got back to the sheriff's department, Detective Alvord advised you of your rights; did he not?

"A.   When he took me upstairs he did.

Q.   Very good.   And then he advised you of the evidence they had against you; did he not?

"Mr. Drew Hanna: Your Honor, we object to this.   Again, it is of no relevance that he was questioned unless he made an answer that would lead to proof that he committed some crime.   The fact that he chose to remain silent is the right of any citizen and no—I mean, no conclusion or inference of guilt can be drawn from that whatsoever.

"The Court: I agree with that, but I don't think it is irrelevant.   Overruled.

"Mr. John Hanna: Thank you. · He advised you of your rights.   He told you what evidence they had against you.   He asked you if you wanted to tell him your version of what happened, didn't he.

"A.   No, sir.

"Mr. Drew Hanna: I object.

"The Witness: He didn't.

"The Court: Pardon?

"Mr. Drew Hanna: I will withdraw the objection at the moment, Your Honor.

"Mr. John Hanna: He didn't ask you what happened.

"A.   No sir, he did not.

"Q.   What did he ask you?

"A.   He told me.

"Q.   He told you what happened?

"A.   He told me his, what he—

"Q.   His version of what happened?

"A.   Yes.   He didn't ask me nothing.

"Q.   The evidence that he had against you or that he felt he had against you?

"A.   Yes.

"Q.   He advised you of all that?

"A.   He advised—

"Q.   Did you—

"A.   He advised me one sentence, and that is serious, what everybody would say, I need a lawyer.   That is serious.   This isn't kid stuff.

"Q.   Did you at any point respond that you did not do this.

"A.   I can't remember, sir, truthfully.

"Mr. Drew Hanna:  Again, we would renew our objection, Your Honor, that this line of questioning is not relevant to the guilt or innocence of the Defendant and should be stricken.

"The Court:  Overruled."

The state then went on to compound the problem during its closing argument.

"Mr. John Hanna:  You heard a colloquy between the Judge and myself and Mr. Hanna about the Defendant's right to remain silent.  Absolutely, that is true. We have all got that right.  When the detective tells you, you have the right to remain silent.  Anything you say can and will be held against you.  You have the right to an attorney.  You have the right to say I want an attorney.  That is what the Defendant did.  Is that what you would have done?  Heck no.  I didn't do this.

"Mr. Drew Hanna:  Again, we raise our earlier objection that there is no relevance to his exercising his right to remain silent.

"The Court:  Objection is noted for the record.

"Mr. John Hanna:  You tell people when you didn't do something.  Your first response is, give me a lawyer.  Your first response is, I didn't do it.  Now, give me a lawyer.  It is not what he did.  First response, give me a lawyer.  No denials.

"I mean, he had this long long story to tell, that if any of it was true, might have ended the case then and there.  Opted not to tell him.  It is his right. Nobody is contending it is not his right.  And had he not taken the stand, I couldn't even say that to you, okay?

"Because that is clearly our Constitutional right against self-incrimination. But once we take the stand, then why we do what we do is fair for you to consider and fair for you to wonder about and fair for you to judge in judging the credibility of Russ Van Meter."

The state assumes that just because the defendant took the stand, he could be questioned about anything.  This assumption is incorrect.  The Supreme Court has determined that using the defendant's post–*Miranda* silence or request for an attorney to disprove an exculpatory story first related at trial violates the Due Process Clause of the Fourteenth Amendment.  *Doyle,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91.  Here, the state argued that Van Meter's exercise of his rights to remain silent and to have an attorney were indications of *guilt.*  The state's questions about the defendant's post–*Miranda* warning silence do not impeach the defendant's credibility, but do imply his guilt.  Therefore, the trial court erred by overruling timely objections.  The first assignment of error is sustained.

■ The second assignment of error claims that the trial court should have permitted Van Meter to recall the victim as a witness. However, the admission of evidence is left within the sound discretion of the trial court. *State v. Awkal* (1996), 76 Ohio St.3d 324, 667 N.E.2d 960. An abuse of discretion involves more than an error in judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

Here, the trial court determined that the evidence could not be admitted because a proper foundation for the questions was not laid during cross-examination. Van Meter argues that the trial court erred when it determined that it did not believe the victim could be recalled. However, the trial court determined that Van Meter had been given the opportunity to question the victim's credibility during cross-examination. The trial court has discretion to exclude this testimony, and we do not find the exercise of this discretion to be unreasonable. The second assignment of error is overruled.

In the third assignment of error, Van Meter claims that he was denied effective assistance of counsel.

■ "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.

■ "On the issue of counsel's effectiveness, the appellant has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. * * * [T]he initial burden [is placed] upon the appellant since * * * [t]o impose automatically the initial burden of proof on the state * * * would penalize the prosecution for acts over which it can have no control." *State v. Jackson* (1980), 64 Ohio St.2d 107, 110–111, 18 O.O.3d 348, 350–351, 413 N.E.2d 819, 822.

■ In this case, Van Meter claims he was prejudiced by his attorney's failure to properly impeach the victim's testimony after telling the jury that such evidence would be forthcoming. A review of the alleged error does not show that Van Meter was deprived of a substantial right. Further, the record does not show that if defense counsel had impeached the victim, the outcome would have been different. Absent this showing, there can be no finding of prejudice to Van Meter. Thus, the third assignment of error is overruled.

■ Finally, Van Meter alleges that the prosecutor engaged in misconduct during the opening statement and the closing argument. Prosecutorial miscon-

duct is not grounds for reversal unless it so taints the proceedings that it deprives the defendant of a fair trial. *State v. Phillips* (1995), 74 Ohio St.3d 72, 656 N.E.2d 643. In the opening statement, the prosecutor made the following statement.

■■■ "After hearing all the testimony, I have no question in my mind that you will be able to concur with what the grand jurors of Henry County have already found in indicting the Defendant. And you will take that one step further and find the Defendant guilty as charged."

■■■ This statement is improper because it implies guilt from the fact that the grand jury indicted the defendant. The decision of the grand jury is merely that there is probable cause to believe that the defendant committed the offenses charged. The testimony before the grand jury is not subject to cross-examination and no defense is provided. Thus, the indictment cannot be used to imply guilt at the trial.

■■■ The prosecutor also erred by interjecting his personal opinion. "It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." *State v. Williams* (1997), 79 Ohio St.3d 1, 12, 679 N.E.2d 646, 657. In closing argument, the prosecutor made the following statements.

"You know and I know that is not true. He did exactly what Jonathan said he did. He did exactly what Dave Colon saw, and I have no question that you will be able to come back with a verdict of guilty on all four counts.

"* * *

"Does that make any sense to you? Is there any logic whatsoever to that? I don't think so, and that is what you have to deal with when you are determining facts, your common sense, your logic."

■■■ These statements considered separately are not enough to deprive the defendant of a fair trial. However, the cumulative effect of these statements along with those discussed in the first assignment of error is prejudicial and denied Van Meter a fair trial. Thus the fourth assignment of error is well taken.

The judgment of the Court of Common Pleas of Henry County is reversed and the cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

SHAW, P.J., concurs.

HADLEY, J., concurs in judgment only.