OPINION
{¶ 1} Monte McCoy appeals from his conviction of misuse of a credit card and possession of criminal tools.
 {¶ 2} The facts underlying this appeal are set out in the State's brief and are not in dispute.
 {¶ 3} On September 26, 2002, Detective James Gebhart of the Huber Heights Police Department was sent to the Elder-Beerman store on Old Troy Pike on report of a fraud. When he arrived Gebhart learned that two men had gone on a shopping spree in the clothing department, on credit obtained by using a phony identity card. By the time Gebhart got to the store, one of the two men had left the store with the merchandise. The other man, Kasim Brown, had been apprehended. Brown told Gebhart that he and a man he knew only as "Hop" had come to Dayton from Philadelphia with fake identity cards. Brown had used a card in the name of Kevin Burke and an address in King of Prussia, Pennsylvania but with his own picture, to obtain instant credit at Elder-Beerman's. Brown told Detective Gebhart that he was staying at the Ramada Inn at I-75 and Little York Road in Dayton.
 {¶ 4} Gebhart went to the Ramada Inn and spoke with the motel clerk. The clerk at the Ramada Inn did not immediately recognize Kasim Brown from the "Kevin Burke" identity card Gebhart had confiscated, but she recognized the address on the card as the same address given by "John Reed," who had checked into room 149.
 {¶ 5} Backed into the parking space in front of room 149 was a mini-van with an open hatch. Gebhart first saw Monte McCoy walking from the van toward room 149. McCoy stopped at the doorway to room 149, looked at Gebhart, and took off in the other direction. Gebhart got out of his unmarked car, identified himself, and asked to talk with McCoy. McCoy agreed to talk to him.
 {¶ 6} McCoy gave Gebhart his own valid Pennsylvania driver's license, which Gebhart called in. While he was waiting on a report he was standing at the door to room 149, which was slightly ajar. Gebhart pushed the door open a couple of inches and yelled "Police." Lakeshia Allen came to the door and opened it. Without entering the room, Gebhart could see that it was full of shopping bags from department stores and electronic equipment. Gebhart then arrested McCoy, believing that he was connected to the fraud at Elder-Beerman and perhaps other crimes as yet undiscovered.
 {¶ 7} Found in McCoy's pocket at booking at the jail was a Radio Shack receipt from the day before issued to "Marc Erway" for more than $1,100 worth of merchandise. When Gebhart followed up the next day by visiting Radio Shack in Englewood, Ohio, Sara Haynes identified McCoy as the man who had opened an account for instant in-store credit the day before in the name of Marc Erway and left the store with a car stereo, cell phones, remote control toys, and other electronic items. Officers also
 {¶ 8} recovered a phony ID card in the name of Marc Erway with McCoy's picture from a storm sewer in the parking lot of the Ramada Inn, in the area in which McCoy was pacing before his arrest.
 {¶ 9} Prior to trial, McCoy moved to suppress the evidence discovered at the time of his arrest. McCoy contended that the police had no basis to arrest him for any offense when he was arrested. The trial court overruled McCoy's motion. The trial court.
 {¶ 10} found that Detective Gebhart had reasonable suspicion to stop and detain McCoy in the parking lot of the motel and probable cause to arrest him when he saw the motel room filled with merchandise.
 {¶ 11} Detective Gebhart charged McCoy with the same credit card offenses as his accomplice, Brown, for the Huber Heights crimes. Gebhart alleged the offenses occurred on September 24, 2002. Later, McCoy was indicted for the same offenses, but the indictment did not specify the location of the criminal activity except that they occurred in Montgomery County. At trial, the State presented the eyewitness testimony of Sara Haynes, the salesperson at the Radio Shack in Englewood, Ohio, to convict McCoy. She testified McCoy used the stolen identification of Marc Erway to obtain $1200 in electronic merchandise.
 {¶ 12} In his first assignment, McCoy contends the trial court erred in overruling his suppression motion.
 {¶ 13} McCoy argues that Detective Gebhart did not have reasonable suspicion to stop him in the motel parking lot because Gebhart never saw him enter Room 149 and McCoy's walking away from the motel room when he saw Gebhart was not suspicious behavior because Gebhart was driving an unmarked car. McCoy submits he should have been free to leave when Gebhart verified the information on McCoy's driver's license and no outstanding arrest warrants were found for him. McCoy contends his physical description did not match that of either of the two men involved in the Elder-Beerman matter. He also notes that his driver's license listed a Philadelphia address and not a King of Prussia address as indicated by the trial court in its decision.
 {¶ 14} In Terry v. Ohio (1968), 392 U.S. 1, the United States Supreme Court held that police may briefly detain a person for questioning when his or her conduct creates a reasonable suspicion that he or she is involved in criminal activity. The officer must be able to point to specific and articulable facts which, taken together with rational references from those facts, provide a particularized and objective basis for suspecting the detainee of criminal activity. United States v. Sokolow (1989),490 U.S. 1. Police may communicate with others to verify the detainee's explanations. United States v. Sharpe (1985),470 U.S. 675.
 {¶ 15} We agree with the State that Detective Gebhart certainly had reasonable suspicion to stop and detain McCoy when he saw him standing next to the mini van and in front of Room 149. Gebhart learned from Kasim Brown that he and his accomplice came from Philadelphia with fake identity cards and were staying at the Ramada Inn on Little York Road. Gebhart also knew that Brown's accomplice had gotten away with stolen merchandise. He learned from the motel clerk that someone by the name of John Reed had checked into Room 149 using the same address as the identity card Gebhart had taken from Kasim Brown. It was reasonable for Gebhart to assume Brown's accomplice would be staying in Room 149 and it was also reasonable to assume the missing merchandise was being unloaded from the van parked outside the motel room. McCoy walked away from the door to Room 149 when he saw Gebhart's unmarked car approaching. When asked to produce identification, McCoy showed Gebhart a Pennsylvania driver's license with a Philadelphia address. While waiting to verify McCoy's identity, Gebhart pushed Room 149's door a few inches and announced his presence. When Ms. Allen opened the motel door, Gebhart observed the numerous shopping bags and electronic equipment. At that point, Gebhart had probable cause to arrest McCoy as Brown's accomplice in the Elder-Beerman theft matter. The evidence found on McCoy at the time of his incarceration implicating him in the Radio Shack thefts was admissible in that prosecution. Illinois v. Lafayette (1983),462 U.S. 640.
 {¶ 16} In order to have probable cause for an arrest, the officer must be aware of facts sufficient to create a fair probability that the person to be arrested committed a crime.Beck v. Ohio (1964), 379 U.S. 89. Detective Gebhart certainly possessed that quantum of proof when he chose to arrest McCoy. The appellant's first assignment of error is overruled.
 {¶ 17} In his second assignment, McCoy contends the trial court deprived him an opportunity to face his accuser by denying him an opportunity to recall Detective Gebhart as a defense witness.
 {¶ 18} At the commencement of the defense case, defense counsel attempted to recall Detective Gebhart, who had previously testified for the state. The prosecutor objected on the grounds of relevance and the Court noted that Gebhart had been subjected to cross examination during the State's portion of the case. The defense counsel stated that McCoy had pointed out to him at the conclusion of Gebhart's testimony that the warrant to arrest him and the complaint charging him had indicated that the offenses occurred in the City of Huber Heights, and that Gebhart had testified they occurred in the City of Englewood. He further stated that McCoy wished to address these issues with the witness to assess his credibility. The court sustained the objection of the State and declined to let Gebhart be recalled.
 {¶ 19} Appellant contends he should have been permitted to recall Gebhart to explain the discrepancy since his credibility was critical to the State's case. The State contends that the trial court did not abuse its discretion in refusing to permit McCoy the opportunity to recall Detective Gebhart because it was irrelevant that McCoy was arrested for the offenses in Huber Heights which occurred on September 26, 2002, and was tried for the offenses which occurred in Englewood on September 24, 2002.
 {¶ 20} An examination of the criminal complaint indicates that Detective Gebhart misstated the date of the offenses in Huber Heights. Although there was probable cause to believe that McCoy was an accomplice to Brown's misuse of a credit card in Huber Heights, the State had an eyewitness to his conduct in the same activity at the Radio Shack in Englewood. We fail to see how Gebhart's misstatement of the date in the original complaint concerning the Huber Heights matter materially affected his credibility.
 {¶ 21} Furthermore, the recall of a witness is within the sound discretion of the trial court, and reviewing courts have been reluctant to find an abuse of discretion when the defense is denied leave to recall a witness that it either did or could have fully cross-examined. State v. Van Meter (1998),130 Ohio App.3d 592, 600, 720 N.E. 2d 934, 940; State v. Braxton,
Cuyahoga App. No. 80663, 2002-Ohio-5072; State v. Steinbrunner,
Mercer App. No. 10-02-12, 2003-Ohio-1818.
 {¶ 22} In his last assignment of error, McCoy argues that his trial counsel was constitutionally ineffective because he failed to cross-examine Detective Gebhart about the discrepancy between the original complaint wherein Gebhart claimed the September 24th offenses occurred in Huber Heights when he was charged by indictment and tried with committing the Englewood offenses on that date.
 {¶ 23} It is not unusual that a person may be tried for an offense different from the one for which he was originally arrested. Although the Huber Heights detective was involved in the arrest of McCoy, the prosecution may have felt that Englewood matter served as a better vehicle for a successful prosecution due to the strength of the eyewitness testimony of Sara Haynes. In any event, there is no reasonability that if McCoy's counsel had pursued the discrepancy in the original complaint, the outcome of McCoy's trial would have been different. Stricklandv. Washington (1984), 466 U.S. 668. The last assignment is likewise overruled.
 {¶ 24} We are not required to review the issues raised in McCoy's pro se brief because he was represented in this appeal by appointed counsel who fully briefed the issues he thought appropriate.
 {¶ 25} The judgment of the trial court is Affirmed.
Fain, P.J., and Young, J., concur.