[Cite as *State v. Anderson*, 2012-Ohio-441.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY  COUNTY

STATE OF OHIO                           :
                                        :      Appellate Case No. 24678
        Plaintiff-Appellant            :
                                        :      Trial Court Case No. 2010-CR-2543
v.                                      :
                                        :
THOMAS CLIFTON ANDERSON :        (Criminal Appeal from
                                        :          Common Pleas Court)
        Defendant-Appellee             :
                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the __3rd__ day of ___February___, 2012.

. . . . . . . . . .

MATHIAS H. HECK, JR., by LINDA M. WOODRUFF, Atty. Reg. #0084161, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building,
P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

NICHOLAS G. GOUNARIS, Atty. Reg. #0064527, 130 West Second Street, Suite 1818,
Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

        {¶ 1}  The State of Ohio appeals from an order suppressing evidence on the

ground that it was obtained as the result of an unlawful search and seizure.  The State

contends that the trial court erred by concluding that the lessee of a parking space upon

which a semi-trailer was stored had a reasonable expectation of privacy in the parking

space as against persons on the open-air lot with permission of the owner. We agree. Consequently, the suppression order from which this appeal is taken is Reversed, and this cause is Remanded for further proceedings.

## I. The Police Look for a Stolen Truck Tractor, and Find a Stolen Trailer Parked Next to It.

{¶ 2} In late July 2010, Police Officer Mark D. Scott, of the Grand Theft Auto Unit of the Dayton Police Department, was notified of a report that a stolen semi-truck tractor might be sitting in an open-air, gravel lot at 2160 Jergens Road, Dayton, between two truck trailers. Scott responded to the scene with Sergeant Dan Melk and Detective Rick Oakley. The lot was bounded by a six-foot-high chain fence, with a gate secured by a padlock. Scott was able to look at the truck tractor from a public access portion of a neighboring lot. He confirmed by the license plate on the truck tractor that it was the one he was looking for.

{¶ 3} Scott contacted Pete Kossoudji, the owner of the lot. Kossoudji arrived and allowed the officers access to the lot. The officers arranged to have the truck tractor they were looking for towed, and Detective Oakley looked at the trailers parked adjacent to it to get information from the license plates, and to get the vehicle identification numbers. From this information, it was determined that the trailer that had been parked to the right of the truck tractor was stolen. It was also towed. At no time did the officers enter any of the vehicles.

{¶ 4} Anderson had leased the spaces on which the vehicles were parked. Scott contacted Anderson, who came to the scene and spoke with the officers.

Although Anderson was not under arrest, Scott nevertheless advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶ 5} An aerial photograph of the lot was admitted in evidence. It is attached as an appendix to this opinion. The markings on the photograph were put there by Kossoudji, during his testimony, showing the location of the four parking spaces and the gate, which is marked with an arrow.

## II. The Motion to Suppress.

{¶ 6} Anderson was charged by indictment with four counts of Receiving Stolen Property, in an amount over $5,000, one count of Tampering with Vehicle Identification Numbers, and one count of Possession of Criminal Tools. He moved to suppress the evidence against him, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, at which Scott and Kossoudji testified, the trial court announced its findings and decision from the bench. The trial court found Anderson's motion well-taken, and entered an order suppressing the evidence.

{¶ 7} From the suppression order, the State appeals. Anderson has not filed a brief.

## III. As Against Persons on the Lot with Permission of the Owner, Anderson Had No Reasonable Expectation of Privacy in the Spaces Immediately Adjacent to his Vehicles.

{¶ 8} The State's sole assignment of error is as follows:

{¶ 9} "THE TRIAL COURT ERRED WHEN IT SUSTAINED ANDERSON'S MOTION TO SUPPRESS BECAUSE THE VIN AND SERIAL NUMBERS WERE IN PLAIN VIEW."

{¶ 10} In reviewing a decision of a trial court on a motion to suppress, an appellate court gives broad deference to a trial court's findings of fact. *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist., 1994). But whether the facts found by the trial court justify suppression of the evidence is a question of law subject to de novo review. *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Retherford*.

{¶ 11} In the case before us, the evidence was unclear as to where the officers were when they read the vehicle identification numbers from the vehicles. The trial court found "that that had to occur by the police officers going into the spaces of the defendant – into the leased area of the defendant." The evidence in the record, such as it is, supports this finding of fact, and we accept it.

{¶ 12} The trial court, relying upon *State v. Staton*, 2d Dist. Greene No. 90-CA-62, 1991 WL 35224 (March 15, 1991), concluded, as a matter of law, that Anderson had a reasonable expectation of privacy in the leased parking spaces immediately adjacent to his vehicles. The trial court concluded, therefore, that the vehicle identification numbers were not observable in plain view from a place where the officers had a right to be. Consequently, the trial court determined that the evidence of the vehicle identification numbers, and the evidence of the vehicles themselves, which were seized as a direct result of the vehicle identification numbers, had been unlawfully obtained, and suppressed that evidence.

{¶ 13} We disagree with the trial court's conclusion that Anderson had a reasonable expectation of privacy in the spaces immediately adjacent to the vehicles – i.e., his leased space – as against persons who were on the lot with permission of the

owner.

{¶ 14} In *Staton*, we differentiated between the observation of marijuana growing in the defendant's backyard, and the warrantless seizure of the marijuana itself. The observation was permitted in evidence, because the officers observed the marijuana from a neighboring backyard. The neighbor had not objected to their presence in the neighbor's backyard, so they had a right to be there. From that vantage point, the marijuana growing in the defendant's backyard was in plain view.

{¶ 15} But to cut down and seize the growing marijuana, the police had to enter the defendant's backyard, which we held to be part of the curtilage of his residence. Because they had no right to intrude into the defendant's backyard, that evidence ought to have been suppressed, although we concluded that the trial court's failure to do so was harmless error, since the evidence of the police officers' observation of the growing marijuana was sufficient for conviction. Id. at *3.

{¶ 16} In short, in *Staton*, the defendant had a reasonable expectation of privacy in the curtilage to his residence, which included his backyard, but he lacked a reasonable expectation of privacy in his neighbor's backyard.

{¶ 17} The crucial issue in the case before us is how to treat the space immediately adjacent to Anderson's parked vehicles – his leased space. Is it comparable to the defendant's backyard in *Staton* in terms of a reasonable expectation of privacy?

{¶ 18} We conclude that society would not recognize a reasonable expectation of privacy, from persons on a private, open-air parking lot with permission of the owner, in the leased space immediately adjacent to a vehicle parked on the lot. A reasonable person would assume that persons who are on the lot with permission, to satisfy their

curiosity concerning a vehicle parked on the lot, would feel free to walk up to the vehicle and look into it. A reasonable person would not assume that persons on the lot would feel free to open the doors to the vehicle, even if unlocked, but Officer Scott testified that none of the officers entered any of the vehicles.

{¶ 19} Although not exactly on point, the closest case we have found on this issue is *United States v. Gooch*, 499 F.3d 596 (6th Cir. 2007). In that case, the defendant's car was parked in a "VIP area" of an otherwise public parking lot, where only persons who had paid a substantial fee were allowed to park. But pedestrians were not restricted from walking through even the "VIP area" of the parking lot. An officer approached the defendant's car, "shined a flashlight straight into the windshield toward the car's floorboard," and "noticed a purple velvet Crown Royal whiskey bag located underneath the driver's seat," from which "what appeared to be the handle of a firearm" was protruding. Id. at 598. When the defendant later got into the car and began to leave, he was stopped, arrested, and charged with a firearm violation. Id. at 599.

{¶ 20} In *Gooch*, the court concluded that the defendant had no reasonable expectation of privacy that persons strolling through the parking lot would not look inside his car. There were no barriers to prevent pedestrians from doing so. Although in the case before us, there was a padlocked gate barring members of the public from entering Kossoudji's lot, Kossoudji, the owner, permitted the police officers to be present on the lot. Because there were no privacy barriers specific to Anderson's leased space – as opposed to the padlocked gate barring entry to the lot – Anderson could reasonably expect that the interior of his vehicles would be exposed to the view of persons whom

Kossoudji permitted on the lot.

{¶ 21} We might come to a different conclusion if Anderson's leased space had been sheltered in some way from prying eyes. If the space he leased was inside a garage or other closed structure, even if it were not locked, we might conclude that he had a reasonable expectation of privacy in the interior of his vehicles, as against persons on the lot with permission of the owner.

{¶ 22} The State's sole assignment of error is sustained.

## IV. Conclusion.

{¶ 23} The State's sole assignment of error having been sustained, the trial court's suppression order, from which this appeal is taken, is Reversed, and this cause is Remanded for further proceedings.

. . . . . . . . . . . .

FROELICH and HALL, JJ., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Laura M. Woodruff
Nicholas G. Gournaris
Hon. Timothy N. O'Connell



**Map of:**

1309 Brandt Pike
Dayton, OH 45404-2469

Notes



All rights reserved. Use subject to License/Copyright

Directions and maps are informational only. We make no warranties on the accuracy of their content, road conditions or route usability or expeditiousness. You assume all risk of use. MapQuest and its suppliers shall not be liable to you for any loss or delay resulting from your use of MapQuest. Your use of MapQuest means you agree to our Terms of Use.

http://www.mapquest.com/print?a=app.core.eb2e2ac5b2dc7f9c7b1a32e2


DEFENDANT'S
EXHIBIT
A