[Cite as *State v. Bass*, 2012-Ohio-3275.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 2011-CA-01 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-220 |
| v. | : | |
| | : | |
| MICHAEL BASS | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of July, 2012.

. . . . . . . . . . .

STEPHEN K. HALLER, Atty. Reg. #0009172, by STEPHANIE R. HAYDEN, Atty. Reg. #0082881, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
        Attorney for Plaintiff-Appellee

REBEKAH S. NEUHERZ, Atty. Reg. #0072093, Marlow & Neuherz, LLC, 150 North Limestone Street, Suite 218, Springfield, Ohio 45501
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}    Michael Bass appeals from his conviction and sentence on one count of

attempted burglary and one count of voyeurism.

{¶ 2}    Bass advances two assignments of error on appeal. First, he contends the trial court erred in overruling his motion to suppress evidence obtained following his warrantless arrest. Second, he claims the State presented legally insufficient evidence to support a voyeurism conviction.

{¶ 3}    The record reflects that Yellow Springs resident P.K. was alone in her bedroom shortly after midnight on April 19, 2010. She heard a scratching noise at her bedroom window. P.K. approached the window to investigate. Upon moving the curtain, she saw a hand coming through the screen, which had been partially torn from the frame. P.K. yelled, and the hand withdrew. She looked outside and saw a man running away. P.K. did not recognize the individual, who was wearing a "hoodie." She called the police.

{¶ 4}    Officer Andrew Gault promptly responded to P.K.'s call and obtained a statement from her. Gault and another officer, Timothy Knoth, also separately proceeded to a residence at 457 Suncrest where they knew appellant Bass lived. They suspected him of being the person outside P.K.'s window based on his admitted involvement in other similar incidents. The two officers saw a bicycle and a backpack lying on the ground in Bass's backyard.

{¶ 5}    After failing to locate Bass, Gault and Knoth moved their police cars out of the vicinity. Gault and a supervising officer then returned to Bass's backyard on foot, hoping to catch him returning home. After two hours, they left. While walking away, Gault noticed Bass standing alone under a street light near his house. Gault recognized Bass based on prior encounters with him. Gault also noted that Bass's clothing and appearance matched a general description that had been provided by P.K. Without asking Bass any questions, Gault arrested

him.

**{¶ 6}**     After being taken to the police station and advised of his *Miranda* rights, Bass admitted being the person outside P.K.'s window. He was charged with attempted burglary and voyeurism. After the trial court overruled a suppression motion, the matter proceeded to trial. A jury convicted Bass of both charges. The trial court sentenced him to concurrent prison terms of 12 months for attempted burglary and 60 days for voyeurism. The trial court also designated him a Tier I sex offender. This appeal followed.

**{¶ 7}**     In his first assignment of error, Bass contends the trial court erred in overruling his pre-trial motion to suppress. Specifically, he challenges the trial court's finding that police had probable cause to arrest him and, as a result, that his incriminating post-arrest statements were admissible.

**{¶ 8}**     Bass claims he was arrested based on nothing more than an "assumption" he was the person outside P.K.'s window and the fact that he fit a general description she provided.   These facts, Bass asserts, did not give Gault probable cause to believe he had committed a crime. While not disputing that he may have been responsible for prior "peeping" incidents, Bass insists that probable cause to arrest him was lacking here. Therefore, he contends the trial court erred in failing to suppress the statements he made while in custody.

**{¶ 9}**     "In order to have probable cause for an arrest, the officer must be aware of facts sufficient to create a fair probability that the person to be arrested committed a crime." *State v. McCoy*, 2d Dist. Montgomery No. 20006, 2004-Ohio-5833, ¶ 16. A general description of a suspect, standing alone, typically cannot establish probable cause because a number of people reasonably might fit the description. *State v. Marshall*, 8th Dist. Cuyahoga

No. 39590, 1979 WL 210519, *4 (Nov. 15, 1979). Probable cause to arrest may exist, however, where a person matching the suspect's description is found in close proximity to the scene of the crime. *Id.* When "used in connection with other evidence, a suspect's criminal history [also] can support a determination of probable cause." *State v. Shepherd*, 4th Dist. Scioto No. 07CA3143, 2008-Ohio-5355, ¶ 11.

{¶ 10} During the suppression hearing, Officer Gault testified that he had investigated another complaint of window peeping in Yellow Springs. (Suppression transcript at 8, 34). Gault knew that Bass had been a suspect in the other case and had confessed to the offense. (*Id*. at 9, 34). The peeping incident in which Bass confessed took place approximately six months before the incident involving P.K. (*Id*. at 10).

{¶ 11} According to Gault, P.K. described the person she saw outside her window as being "of slim build; a male, five eight to five ten; wearing a baggie sweatshirt or hoody." (*Id*. at 24). Bass matched this description when Gault saw him under the street light. (*Id*. at 25). Gault also recognized Bass on sight and knew of his prior window peeping. (*Id*. at 15, 25).

{¶ 12} Gault testified that he had reason to believe Bass had fled the scene on the night in question. According to Gault, Officer Thomas Knoth proceeded directly to Bass's residence while Gault spoke to P.K. As he left P.K.'s house, Gault received a call to assist Knoth at Bass's home, because Officer Knoth had reported seeing someone ride a bicycle into Bass's backyard. (*Id*. at 32-33, 35, 38). When they arrived in the backyard, however, the officers failed to find the rider. Instead, they saw a bicycle and a backpack laying on the ground near a path. (*Id*. at 35). They suspected that the rider had fled from Knoth. (*Id*. at 12). Gault also knew that Bass frequently rode a bicycle around town. (*Id*.).

{¶ 13}   Gault further testified that Bass's home was roughly a half-mile to one mile from P.K.'s residence. (*Id*. at 32). He also testified that the streetlight where he found Bass was about 75 feet away from Bass's home. (*Id*. at 37). From the time Gault responded to P.K.'s call (shortly after midnight) until the time he saw Bass under the streetlight (approximately two hours later), Gault did not observe anyone else outside on the streets. (*Id*. at 48-49).

{¶ 14}   The only other witness at the suppression hearing was police sergeant Thomas Jones. According to Jones, Bass had been arrested "several times in the past" for voyeurism. (*Id*. at 52). These prior incidents, which Bass had admitted, included window peeping. (*Id*. at 52-53). Jones testified that Bass "admitted to five times over a period of several months." (*Id*. at 53). At  the time of the incident involving P.K., Jones had been trying to contact Bass regarding an alleged probation violation for a voyeurism offense. (*Id*. at 52). Jones explained that on the night in question he assisted Gault and Knoth in locating Bass. (*Id*. at 54).

{¶ 15}   After making factual findings consistent with the events set forth above, the trial court reasoned as follows regarding probable cause to arrest:

The Court will probably, in fairness to both parties, say this is a fairly close call. * * *

The complainant in this case, and based upon the discussion with the complainant, the Court finds that the Yellow Springs Police Department could find that a felony had been committed and that would be attempted burglary.

Based upon the description provided by the complainant, the Officer, approximately two hours later, saw an individual who fit exactly the

description, albeit a limited description, but it fit the description of this Defendant here today.

The Court notes of significant value the fact that at approximately 1:00 a.m. Sergeant Jones was at the residence of the Defendant, and during that time period was able to determine that this Defendant was not home, was on the street.

It's also of significant note to this Court that Yellow Springs is a relatively residential location with very few people on the street at that hour of the night. In fact, the record reflects that the Officer indicated he did not see anyone else on the street, let alone someone who fits the description provided by the complainant.

The fact — and I find this relatively significant. The fact that Sergeant Jones was able to establish the fact that the Defendant was somewhere on the street from 1:00 a.m. until 2:30 allows this Court to draw a conclusion that the person who was committing the offense at approximately 12:30 a.m. until 1:00 a.m., was on the street, and the person apprehended later, which the Court can establish was on the street at least between 1:00 a.m. and 2:30 , fits the description of the complainant and also turns out to be the Defendant.

In addition to those considerations, the Court is aware that the Officers knew this particular accused; that is, Mr. Bass, and the nature of some behavior that he had been involved in going to residences, going onto the property of the residents for the

purpose of committing the offense of Voyeurism.

In other words, the behavior involved in that particular type of conduct is consistent with the nature and offense which the Yellow Springs Police Department was aware of on or about April 19th, 2010, at 12:30 a.m.

I find that based upon those considered factors and in considering the totality of the circumstances, and I again emphasize, it's a close call. However, the Court finds based upon those factors, the findings of fact, and considering those factors that I have stated for the record, that I do believe that there was probable cause to place the Defendant under arrest for those factors the Court has stated.

(Suppression hearing transcript at 79-81).

{¶ 16} "In reviewing a decision of a trial court on a motion to suppress, an appellate court gives broad deference to a trial court's findings of fact. * * * But whether the facts found by the trial court justify suppression of the evidence is a question of law subject to de novo review." *State v. Anderson*, 2d dist. Montgomery No. 24678, 2012-Ohio-441, ¶ 10. Having reviewed the record, we find that Officer Gault had probable cause to arrest Bass.

{¶ 17} The record reflects that P.K. saw a person matching Bass's physical description and wearing a hoodie outside her window. Gault and the other officers knew about Bass's history of window peeping. Gault also knew that Bass frequently rode a bicycle and lived less than one mile from P.K. While Gault was interviewing P.K., Officer Knoth saw an unidentified person ride a bicycle into Bass's backyard. Although police could not catch the individual, Gault and Knoth found the bicycle and a backpack laying on the ground. Knoth

reasonably believed the rider had fled from him. The only person Gault observed on the streets of Yellow Springs that night was Bass, who was wearing a dark-colored hoodie, matched the general physical description of the suspect, and had a recent history of window peeping. In our view, these facts created a fair probability that Bass was the person who had been outside P.K.'s window. Therefore, Gault had probable cause to arrest him. The first assignment of error is overruled.

{¶ 18}   In his second assignment of error, Bass challenges the legal sufficiency of the evidence to support his voyeurism conviction. Specifically, he contends the State presented no evidence that he was trespassing outside P.K.'s window "for the purpose of sexually arousing or gratifying himself" as required for a voyeurism conviction.

{¶ 19}   When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on at least one element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 20}   With the foregoing standards in mind, we conclude that the State presented

legally sufficient evidence to support Bass's voyeurism conviction.[1] Following his arrest, Bass admitted to Sergeant Jones that he was the person outside P.K.'s window. (Trial transcript at 136). When Jones asked why Bass had attempted to remove the screen, Bass replied "that he was very lonely, that he was trying to develop, find a relationship." (*Id*. at 137). Bass later stated that he had tried to remove the screen because he "wanted to look inside." (Id. at 44). Bass also told Jones "that he thought about sex almost on a daily basis, a regular basis, and he described himself as being horny." (*Id*. at 138). Bass made this remark while explaining why he had been outside P.K.'s window removing the screen. (*Id*.). Finally, Bass admitted to Jones that he "fantasized about going into a window and having sex with somebody." (*Id*. at 139).

{¶ 21}  Bass's actions and statements support the jury's finding that he violated R.C. 2907.08(A), which provides: "No person, for the purpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another, to spy or eavesdrop upon another." Specifically, the State's evidence established that Bass trespassed to spy on P.K.for the purpose of sexually arousing or gratifying himself. Therefore, his voyeurism conviction is supported by legally sufficient evidence. The second assignment of error is overruled.

{¶ 22}  Having overruled both assignments of error, we affirm the judgment of the Greene County Common Pleas Court.

. . . . . . . . . . . .

---

[1]We also reject Bass's untimely reliance on *State v. Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897 (1974), which he cites for the proposition that circumstantial evidence is insufficient to sustain a conviction unless the circumstantial evidence is irreconcilable with any reasonable theory of the accused's innocence. The Ohio Supreme Court expressly overruled *Kulig* more than twenty years ago, holding that circumstantial evidence need not be irreconcilable with any reasonable theory of innocence. *Jenks* at 272-273.

GRADY, P.J., and FROELICH, J., concur.

Copies mailed to:

Stephen K. Haller
Stephanie R. Hayden
Rebekah S. Neuherz
Hon. Stephen Wolaver