[Cite as *State v. Whitten*, 2012-Ohio-4455.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No.   25031 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 11-CR-1426 |
| v. | : | |
| | : | |
| JERRY S. WHITTEN | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 28th day of September, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH,   Atty. Reg. #0069384, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, Post Office Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MICHAEL C. THOMPSON, Atty. Reg. #0041420, 5 North Williams Street, Wright-Dunbar Business Village, Dayton, Ohio 45402-2843
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Jerry S. Whitten appeals from his conviction and sentence following a

no-contest plea to one count of crack cocaine possession, a fifth-degree felony.

{¶ 2}    In his sole assignment of error, Whitten contends the trial court erred in overruling his motion to suppress the evidence against him.

{¶ 3}    The facts underlying the present appeal are set forth in the trial court's November 28, 2011 entry and order overruling the motion. The trial court's factual findings, which were based on suppression-hearing testimony, are as follows:

> On April 20, 2011 Officers Timothy Braun and Don Boegner were working the 11:30 PM-7:30 AM shift as police officers for the City of Dayton. Officer Braun has been with the Dayton Police Department for fourteen years, but has served as a police officer for twenty-three years. Previously, for six years Officer Braun was assigned to work with the DEA Task Force and was also with the drug unit of the Dayton Police Department. Both officers were wearing the uniform of the day and were traveling in a marked City of Dayton police cruiser. Officer Boegner was driving the cruiser that morning, with Officer Braun as the passenger.

> At approximately 3:30-3:45 AM on April 20, 2011, the officers were in the area of Steele and Clover in the City of Dayton, Montgomery County, Ohio. The Dayton Police Department had received numerous citizen complaints about drug sales in the area of Steele and Clover, and other officers had made drug arrests in the same general area. The citizen complaints were very specific and were related to the one block area around Steele and Clover. From the experience of the officers, drug sales in that area have increased in the past

year, along with criminal activity, such as theft, robberies and burglaries, which are often experienced in an area where there is drug activity. Officers Braun and Boegner were on Steele driving southbound from Clover when they observed a red pickup truck driving northbound on Steele make a right hand turn eastbound on Clover without signaling the turn. Officer Braun had obtained the license number and, after running the information, learned that the registered owner of the vehicle had numerous field interview cards in the police department's MIS system, indicating that the owner had been interviewed regarding, and at times arrested for, possession of cocaine. Most of the field interviews had taken place in west Dayton. The Steele and Clover area is in east Dayton. It was raining, although eventually, during a traffic stop described below, the rain turned into what Officer Braun described as "a downpour." There was no other traffic in the area.

The officers turned their vehicle around to make contact with the vehicle. The vehicle turned from Clover onto St. Paul. In following the path of the vehicle, the officers traveled to the area of Xenia Avenue, where they lost contact with the vehicle. The officers remained in the area and a short time later observed the same vehicle turn off McClain and onto McClure Avenue. Officer Braun confirmed, based upon the license plate information previously obtained, that it was the same vehicle. The officers initiated a traffic stop of the vehicle for the violation previously observed. The vehicle stopped immediately. The officers exited their cruiser; Office[r] Boegner approached the driver's side

of the vehicle and Officer Braun approached the passenger side of the vehicle. As Officer Braun approached the vehicle the window was already down. Officer Braun had already made verbal contact with the passenger as he approached the vehicle. He noticed that the passenger, later identified as the defendant herein, Jerry Whitten, was leaning over in what was described by the officers as an "unnatural position," with his right hand down at the floorboard. The passenger was not wearing a seat belt. Officer Braun asked Whitten for identification and advised him that he was going to write him a citation for not wearing his seatbelt. Officer Braun could not see what Whitten was doing or what he may have had as he was leaning. Whitten was not moving around and Officer Braun found his position, particularly, to be suspicious and alarming. Officer Braun was concerned that Whitten had a weapon. He did not want to lean in the vehicle to see if it was a weapon out of concern for his safety. Officer Braun was concerned that, based upon the manner in which Whitten was sitting, that he had a weapon. Officer Braun opened the passenger door to make certain that Whitten did not have a weapon, given his unusual movements. Upon opening the door Officer Braun observed an open 40 ounce can of beer between the passenger seat and the door of the vehicle. The can contained liquid, which Braun believed was alcohol.

Officer Braun asked Whitten to step out of the vehicle. He advised Whitten that it was an arrestable offense to have an open container of alcohol in a motor vehicle. Whitten stood up and Braun had Whitten face away from him

for the purpose of conducting a pat-down of his person. Officer Braun, who was holding Whitten's waistband, asked Whitten if he had any weapons on him. Whitten responded "no." However, Officer Braun could see the outline of a pocket knife in Whitten's back right pocket. He asked Whitten again if he had any weapons on him. Whiten responded "that's just a little pen knife." Officer Braun removed the knife, which was about three inches long when folded. He then continued to pat down Whitten for any additional weapons.

Whitten had not been advised that he was under arrest, nor had Officer Braun drawn his weapon. Officer Braun has conducted thousands of pat downs in his career. While still standing behind Whitten and while he was patting down Whitten right below Whitten's belt line in his underwear below his navel Officer Braun felt a hard cigarette pack, which he immediately recognized as such. During his career, when conducting a pat down, Officer Braun has found hundreds of cigarette packs in pockets. In the past he has found cigarette packs in the area he felt the pack on Whitten's body, each time containing drug[s], drug paraphernalia or weapons. Officer Braun stated to Whitten "you have some stuff on you, don't you." Whitten shook his head in the affirmative. Braun replied "crack?" Whitten responded "yeah, just a twenty." Officer Braun walked Whitten back to the police cruiser, handcuffed Whitten, and removed the cigarette pack from Whitten's person by pushing it out of his waistband. As he was pushing the pack upward out of Whitten's pants the cigarette package opened. Officer Braun states "whoops," to which Whitten spontaneously

replied, "don't worry, it's at the bottom."

In the cigarette package was a plastic baggie which appeared to contain crack cocaine. Officer Braun continued the search. While he continued the search he felt an object near Whitten's test[i]cles which he immediately recognized as a crack pipe. As Braun was about to retrieve the object Whitten stated "you don't have to get it, it's falling out." Whitten then shook his leg and the crack pipe fell to the ground, where Officer Braun retrieved the object.

Defendant was then placed in the officers' cruiser. The driver of the vehicle, James Coots, who was the registered owner of the vehicle, was also placed in the cruiser and issued a citation for the traffic violation. When the driver had exited the cruiser Whitten was then transported to jail.

At the jail Officer Braun verbally advised Whitten of his Miranda rights. Whitten agreed to speak with Officer Braun. Whitten had an odor of alcohol on his breath but was very coherent and very polite. Whitten advised Braun that he knew Coots from prison and that Coots had called him and they had driven to Dayton with the purpose of purchasing crack. Whitten also told Officer Braun that shortly before the officers had first seen the vehicle on Steele they had purchased crack cocaine.

(Doc. #11 at 1-4).

{¶ 4} Based on the foregoing facts, the trial court found a traffic stop justified due to an observed turn-signal violation. The trial court further found that Braun possessed a reasonable, articulable suspicion that Whitten was armed, thereby authorizing a pat down.

Although the pat down resulted in Braun feeling a cigarette package, the trial court concluded that Braun could not remove the package based on an assumption that it contained contraband. Instead, the trial court found removal of the package justified based on Whitten's statements to Braun. The trial court concluded that Whitten was not "in custody" for *Miranda* purposes when Braun patted him down and inquired about the cigarette package. The trial court reasoned that Whitten's admission about possessing crack cocaine gave Braun probable cause to conduct a search incident to arrest, including a search of the cigarette package. Finally, with regard to Whitten's post-arrest statements at the jail, the trial court concluded that they were preceded by a valid Miranda waiver and that they were made voluntarily. As a result, the trial court overruled Whitten's suppression motion. (*Id.* at 5-11).

{¶ 5} Following the trial court's ruling, Whitten pled no contest to one count of crack cocaine possession. The trial court found him guilty and sentenced him to community control. This appeal followed.

{¶ 6} In his assignment of error, Whitten challenges the trial court's suppression ruling. Whitten advances three arguments in support. First, he contends Braun unlawfully arrested him for a minor-misdemeanor open-container violation. Second, if only an investigatory detention occurred, Whitten claims Braun lacked reasonable, articulable suspicion to justify a weapons pat down. Third, assuming the pat down was lawful, Whitten asserts that Braun unlawfully seized and searched the cigarette package when its incriminating character was not readily apparent.

{¶ 7} "In reviewing a decision of a trial court on a motion to suppress, an appellate court gives broad deference to a trial court's findings of fact. * * * But whether the facts found

by the trial court justify suppression of the evidence is a question of law subject to de novo review." *State v. Anderson*, 2d Dist. Montgomery No. 24678, 2012-Ohio-441, ¶ 10. Having reviewed the record, we conclude that the trial court's factual findings are supported by Officer Braun's suppression-hearing testimony. Applying those facts to the legal issues before us, we find, for the reasons below, that Whitten was not arrested for a minor misdemeanor, that Braun had reasonable, articulable suspicion justifying a weapons pat down, and that Braun lawfully seized and searched the cigarette package.

**{¶ 8}**　　As an initial matter, Whitten does not dispute the lawfulness of the traffic stop based on a turn-signal violation. *Dayton v. Erickson*, 76 Ohio St.3d 3, 1996-Ohio-431, 665 N.E.2d 1091. Officer Braun approached the stopped vehicle, asked Whitten for identification, and explained that Whitten was going to be cited for not wearing a seatbelt. Whitten noticed that Braun was leaning over with his right hand near the floorboard. Concerned that he might be holding a weapon, Braun opened the car door and observed an open can of beer. At that point, Braun lawfully ordered Whitten out of the car. *Maryland v. Wilson*, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) and *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). Although Braun told Whitten an open-container violation was an arrestable offense, the record does not reflect that Whitten actually was arrested at that point. (Suppression Tr. at 10).

**{¶ 9}**　　As Whitten exited the car and stood up, Braun had him face away and asked whether he had any weapons on him. Whitten responded negatively. Braun knew this was untrue because he could see the outline of a knife in Whitten's back pocket. (Tr. at 11-12). Whitten's denial and Braun's observation of the knife gave the officer reasonable, articulable

suspicion to conduct a pat down for additional weapons. That pat down resulted in Braun feeling what he immediately recognized as a cigarette package down the front of Whitten's underwear.

{¶ 10} Without removing the cigarette package, Braun stated: "You have some stuff on you, don't you." (*Id*. at 15). Whitten responded affirmatively. (*Id*.). Braun asked whether it was crack, and Whitten responded, "Yeah, just a 20." (*Id*.). When Whitten made these admissions, he had been "seized" for purposes of an investigatory detention but was not yet "in custody" for purposes of *Miranda* warnings. *See*, *e.g.*, *State v. Healy*, 2d Dist. Montgomery No. 18232, 2000 WL 1062197, *6 (Aug. 4, 2000) (recognizing that a person temporarily detained for a *Terry* stop is not "in custody" for purposes of *Miranda*). At that point, the restraint on Whitten's freedom of movement was not at a level associated with a formal arrest. The record does not reflect that Whitten was held at gunpoint, that he was ordered to the ground, that he was told to place his hands behind his back, or that he was handcuffed. The detention was brief, Whitten remained next to the truck, and he was not told that he was under arrest. Therefore, *Miranda* warnings were not necessary when Braun inquired about the contents of the cigarette package.

{¶ 11} Whitten's admission that he possessed crack cocaine gave Braun probable cause to arrest him for drug possession, to seize the cigarette package, and to look inside. *Compare State v. Lee*, 2d Dist. Montgomery No. 18517, 2001 WL1048550, *3 (Sept. 14, 2001) ("On appeal, the State relies on Lee's response to House's question about what was in his pocket—'just a little weed, if anything'—as justification for the removal of what turned out to be crack cocaine. Although Lee did not admit to possessing crack cocaine, he did admit

to possessing contraband drugs. It was not necessary during this investigative detention that House *Mirandize* Lee before asking him what was in his pocket, and Lee's answer furnished probable cause for seizure of what turned out to be crack cocaine."); *State v. Martin*, 2d Dist. Montgomery No. 19186, 2002-Ohio-2621, ¶ 35 ("The trial court simply thought it inappropriate for Emerson to ask a jaywalker about drugs. While this inquiry may have been inappropriate, it did not convert an investigative stop into a formal arrest or a restraint on Martin's freedom of the degree commonly associated with an arrest. Accordingly, Officer Emerson was not required to comply with the requirements of *Miranda* before asking questions of Martin. Accordingly, Martin's admissions provided the basis for probable cause to search her for the cocaine she possessed."); *State v. Mapson*, 8th Dist. Cuyahoga No. 87409, 2006-Ohio-5248, ¶ 22 ("Since Douglas' investigatory stop of Mapson 'did not rise to the level of a custodial arrest,' his question of whether Mapson had 'anything' on his person did not 'trigger the requirement of *Miranda* warnings.' Mapson's answer, viz., that he was carrying a type of illegal contraband, in turn, gave Douglas cause immediately to remove the item from Mapson's pocket." (Citation omitted.)). Finally, contrary to Whitten's argument in his reply brief, we are unpersuaded that his incriminating admission was too vague to be meaningful.

{¶ 12}   Based on the foregoing reasoning, we find no error in the trial court's denial of Whitten's suppression motion. Whitten's assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN and DONOVAN, JJ., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Michael C. Thompson
Hon. Mary K. Huffman